UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BOXES OF ST. LOUIS INCORPORATED, d/b/a, Boxes, Inc., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 4:09CV922 RWS ) |
| JEFF DAVOLT, et al., | ) ) ) |
| Defendants. | ) ) |

# MEMORANDUM AND ORDER

Plaintiff Boxes of St. Louis, Inc. (Boxes, Inc.) is in the business of providing graphic display and packaging solutions to customers in, among other places, the St. Louis, Missouri metropolitan area. Boxes, Inc. alleges in its complaint that four employees left the firm and started a competing business with the help of another competitor. The complaint alleges numerous claims ranging from breach of contract to violations of federal computer fraud statutes. Defendants have filed five separate motions to dismiss on various grounds. Because I find that Boxes, Inc has sufficiently asserted its claims I will deny Defendants' motions.

*Background*

Defendants Anabel Davolt, Jeff Davolt, Chris Watson, and Tim Gibilterra were employees of a division of Boxes, Inc. known as Mid-America Display. Anabel was a creative artist for the firm, Jeff was the creative director, and Watson and Gibilterra were salespersons. The Davolts resigned form Boxes, Inc. on March 19, 2009. Watson and Gibilterra resigned on April 2, 2009. The complaint alleges that before these employees resigned they set up and continue to operate a competing company, Defendant Brio Displays, LLC. All four employees

had entered confidentiality agreements with Boxes, Inc. In addition, Jeff Davolt and Watson had entered non-solicitation / non-diversion agreements with the firm.

Boxes, Inc. alleges that these employees violated their agreements of confidentiality and non-solicitation both before they resigned from the firm and afterwards. The complaint asserts that because the newly formed Brio did not have production capabilities, a competitor, Defendant GFA Decorative Trade Services, Inc. and its owner / agent Defendant Steve Hannigan were engaged to produce the display and packaging materials for Brio. Boxes, Inc. asserts, among other claims, that all of Defendants entered into an overt agreement to facilitate the usurpation of Boxes, Inc's customers in violation of the employees' agreements and various state and federal law.

Boxes, Inc. asserts the following claims in its complaint:

Count I - Civil Conspiracy (against all Defendants);

Count II - Violation of the Stored Wire and Electronic Communications Act (SECA) 18 U.S.C. § 2701 (against Brio, GFA, Jeff Davolt, Watson, and Gibilterra);

Count III - Violation of the Computer Fraud and Abuse Act (CFAA) 18 U.S.C. 1030(a)(4) (against Brio, GFA, Jeff Davolt, Watson, and Gibilterra);

Count IV - Violation of the Computer Fraud and Abuse Act (CFAA) 18 U.S.C. 1030(a)(5) (against Brio, GFA, Jeff Davolt, Watson, and Gibilterra);

Count V - Tampering with Computer Data and Equipment, 537.525 R.S. Mo. (against Brio, GFA, Jeff Davolt, Watson, and Gibilterra);

Count VI - Lanham Act (false designation) 15 U.S.C. § 1125 (against Brio, GFA,

Jeff Davolt, Watson, and Gibilterra);

Count VII - Common Law Trademark Infringement and Unfair Competition (against Brio, GFA, Jeff Davolt, Watson, and Gibilterra);

Count VIII - Misappropriation of Trade Secrets in Violation of the Missouri Uniform Trade Secrets Act § 417.450 R.S. Mo. (against Brio, GFA, Anabel Davolt Jeff Davolt, Watson, and Gibilterra);

Count IX - Unfair Competition Through Misappropriation (against Brio, GFA, Anabel Davolt Jeff Davolt, Watson, and Gibilterra);

Count X - Breach of Duty of Loyalty (against Anabel Davolt Jeff Davolt, Watson, and Gibilterra);

Count XI - Breach of Fiduciary Duty (against Anabel Davolt Jeff Davolt, Watson, and Gibilterra);

Count XII - Unjust Enrichment (All Defendants);

Count XIII - Breach of Contract - Confidentiality (against Jeff Davolt);

Count XIV - Breach of Contract - Confidentiality (against Anabel Davolt);

Count XV - Breach of Contract - Confidentiality (against Watson);

Count XVI - Breach of Contract - Confidentiality (against Gibilterra);

Count XVII - Breach of Contract - Non-Solicitation / Non-Diversion (against Jeff Davolt);

Count XVIII - Breach of Contract - Non-Solicitation / Non-Diversion (against Watson);

Count XIX - Tortious Interference with a Business Expectancy (against all Defendants);

Count XX    - Tortious Interference with Contracts (against Brio);

Count XXI   - Accounting (against all Defendants);

Count XXII  - Request for Preliminary and Permanent Injunctions (against Anabel Davolt Jeff Davolt, Watson, and Gibilterra);

Defendants have filed five motions to dismiss on the following basis:

(1)  Boxes of St. Louis Incorporated has no standing to assert any contract claims;

(2)  the complaint fails to state any claim under federal law;

(3)  the complaint fails to state claims against Defendants GFA and Hannigan.

***Legal Standard***

In ruling on a motion to dismiss, I must accept as true all factual allegations in the complaint and view them in the light most favorable to Plaintiffs. Fed. R. Civ. P. 12(b)(6); Erickson v. Pardus, 551 U.S. 89, 94 (2007). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Romine v. Acxiom Corp., 296 F.3d 701, 711 (8th Cir. 2002).

***Discussion***

*Boxes, Inc.'s legal status*

Boxes of St. Louis Incorporated is a Missouri corporation. In 1978, it registered with the Missouri Secretary of State the fictitious name "Boxes, Inc." under which it conducts business. The four confidentiality contracts at issue in this lawsuit were made between "Boxes, Inc." and

Anabel Davolt Jeff Davolt, Watson, and Gibilterra. The two non-compete agreements were made between "Boxes, Inc." and Jeff Davolt and Watson.[1] Prior to the execution of these agreements Boxes of St. Louis Incorporated changed it address with the Secretary of State. It did not, however, update the address for its fictitious name before the contracts were entered.

Because the address for Boxes, Inc. was not changed, Defendants assert that Boxes, Inc. was an invalid and legally void entity at the time the contracts were entered. As a result, Defendants contend that Boxes of St. Louis Incorporated has no standing to sue under the agreements because it could not conduct business through the invalid fictitious name of Boxes, Inc.

Defendants have not offered any statute or case law that supports their proposition that the failure to update the address of a fictitious business name deprives an entity from conducting business under its otherwise duly registered name. To the contrary, under Missouri law conducting business under an unregistered fictitious name may be a misdemeanor but it is not grounds to void a contact entered under the fictitious name. State v. Euge, 400 S.W.2d 119, 122 (Mo. 1966); Phillips v. Hoke Const., Inc., 834 S.W.2d 785, 788 (Mo. Ct. App. 1992). Whether Boxes, Inc.'s *failure to update* its address amounts to a misdemeanor is of no moment in this matter. As a result, I find that Boxes of St. Louis Incorporated has standing to bring this action because it validly entered the contracts at issue under its fictitious name Boxes, Inc. despite the fact that Boxes, Inc.'s address was not updated at the time the contracts were entered.

---

[1] All of the agreements were executed in 2005 except for Gibilterra's which were signed in 2003.

*Federal claims for improper access to Boxes, Inc.'s computer systems*

Defendants assert that Boxes, Inc.'s federal claims under the Stored Wire and Electronic Communications Act, 18 U.S.C. § 2710 (SWECA)(Count II) and under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4) and § 1030(a)(5) (CFAA)(Counts IV and V) should be dismissed because they do not apply to employees who have been granted access to a company's computer systems. Defendants contend that claims under both the SWECA and the CFAA are limited to computer system attacks by "outside , third parties, or other 'high-tech criminals,' rather than allegedly rogue employees." (Defs.'s Memo. Supp. at 16)

Defendants' motion on these grounds must be denied. Boxes, Inc. alleges that Jeff Davolt, Watson, and Gibilterra, without authorization and / or in excess of their authorization accessed Boxes, Inc.'s computer system to obtain confidential and proprietary information in order to compete with Boxes, Inc. The complaint asserts that these Defendants acted both individually and as authorized agents of each other, and of Defendants Brio and GFA. A claim under the SWECA and the CFAA is cognizable against an employee who exceeds the authorized use of an employer's computer system. See International Airport Centers, L.L.C. v. Citrin, 440 F.3d 418 (7th Cir. 2006) (CFAA - employee acting without authorization when he breached duty of loyalty and accessed computer for improper purposes); Lasco Foods, Inc. v. Hall and Shaw Sales, Marketing, & Consulting, LLC, 2009 WL 3523986, 5 (E. D. Mo., Oct. 26, 2009)(claims under the CFAA and the SWECA lie against employee who exceeded the authorized use of an employer's computer system).

*Lanham Act claim*

Boxes, Inc. asserts a claim for false designation under the Lanham Act, 15 U.S.C. § 1125

(Count VI). The complaint claims that Jeff, Davolt, Watson, and Gibilterra falsely misled Boxes, Inc.'s customers by representing that they were acting on Boxes, Inc.'s behalf. These Defendants allegedly used Boxes, Inc.'s designs and schematics and solicited business though Boxes, Inc.'s e-mail accounts in and effort to secure business for Boxes, Inc. competitors Defendants Brio and GFA. The complaint asserts that Defendants used Boxes, Inc.'s name and / or trademark to deceive and confuse Boxes, Inc.'s customers about the source of the product in an effort to secure business for Brio and GFA. The complaint also alleges that theses deceptions were material and influenced, or likely influenced, the purchasing decisions of Boxes, Inc.'s customers and led to Boxes, Inc.'s loss of business to these customers.

> A false designation claim under the Lanham Act can be asserted against:
>
> (1) "[a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> [(2)] is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a)(1)(A) and (B). See also Mid-List Press v. Nora, 374 F.3d 690, 693 (8th Cir. 2004)(finding a false designation action proper where defendant used plaintiff's name to market a book). A claim is stated if it alleges that a person used the name or symbol of another in connection with goods or services that is likely to cause confusion as to the source of the goods.

Boxes, Inc. clearly alleges that Defendants used Boxes, Inc.'s name and trademark to confuse Boxes, Inc.'s customers about the source of the product that was being sold to them.

This allegation states a valid claim under the Lanham Act.

Defendants contend that the Lanham Act claim fails because Boxes, Inc. did not assert that it had a "valid" trademark which was infringed. Defendants rely on language in <u>Steak n Shake Co. v. Burger King Corp.</u>, 323 F. Supp.2d 983 (E. D. Mo. 2004) for the premise that Boxes, Inc. must allege a "valid" trademark to proceed with an infringement claim. <u>Steak n Shake Co</u>, however, does not make such a representation. The court in that case merely noted that "to succeed on its trademark infringement and false designation of origin claims ... [plaintiff] must prove ownership of a valid trademark and a likelihood that defendants' allegedly infringing mark would be confused with the valid mark." <u>Id.</u> at 991. (citing <u>Gilbert/Robinson, Inc. v. Carrie Beverage-Missouri, Inc.</u>, 758 F. Supp. 512, 521 (E. D. Mo. 1991)(to establish a trademark a plaintiff must prove: (1) the ownership of a distinctive mark or name and (2) defendant's use of a similar mark or name which is likely to cause confusion as to the source of the products sold by defendants.) The <u>Steak n Shake Co.</u> decision was not ruling on a pleading standard. It merely stated what a plaintiff must ultimately prove to succeed in its claim.

The notice pleading standard in federal court requires only a short plaint statement showing a claimant is entitled to relief. It does not require the use of specific words, which if omitted, render a claim invalid. See <u>Erickson</u>, 551 U.S. at 93 ("Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'") Defendants' motion to dismiss Boxes, Inc.'s Lanham Act claim for omitting the word "valid" is without merit and will be denied.

*Defendants GFA and Hannigan's motions to dismiss*

Defendants GFA and Hannigan seek a dismissal of all the claims against them because

they fail to assert grounds for relief. GFA and Hannigan argue that the complaint fails to allege specific acts taken by them which would entitle Boxes, Inc to relief. As an example of a deficiency of the complaint GFA and Hannigan assert that the conspiracy claim (Count I) fails because it does not allege any specific act performed by GFA and Hannigan to advance the conspiracy. Defendants' position misconstrues the basis of a conspiracy claim.

The elements of a civil conspiracy claim under Missouri law: are (1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and (5) the plaintiff was thereby injured. Moses.com Securities, Inc. v. Comprehensive Software Systems, Inc., 406 F.3d 1052, 1063 (8th Cir. 2005). The result of a conspiracy is to make the conspirators joint tortfeasors where each is jointly and severally liable for all damages naturally flowing from the conspiracy. "[E]ach defendant is made responsible for the acts of the other in pursuance of the common design." Gettings v. Farr, 41 S.W. 3d 539, 541 (Mo. Ct. App. 2001). A conspiracy does not give rise to a civil action itself, something must be done in pursuit of the conspiracy which, absent the conspiracy, would create a right of action against one of the defendants, if sued alone." Id. at 542.

A conspiracy allegation does not need to allege that each member of the conspiracy did some affirmative act in furtherance of the conspiracy. A conspiracy claim need only asset that any member of the conspiracy committed a wrongful act in furtherance of the conspiracy which allows all of the conspirators to be liable for the wrongful act.

Boxes, Inc. properly asserts a conspiracy claim against all Defendants. The wrongful acts committed by GFA and Hannigan's alleged co-conspirators done in furtherance of the conspiracy are stated in the remaining counts of the complaint. These acts, if proven, subject GFA and

Hannigan to liability as co-conspirators.

Similarly, the challenged remaining counts of Boxes, Inc.'s complaint assert that its former employees were acting as GFA's agents when they were committing their alleged wrongful acts. Such an agency allegation creates the basis for the claims against GFA.

Moreover, the claims against GFA and Hannigan for unjust enrichment, tortious interference with a business expectancy, and an accounting are all supported by the allegations of the complaint when read as a whole.

Under Missouri law unjust enrichment occurs where a benefit is conferred upon a person in circumstances in which retention by him of that benefit without paying its reasonable value would be unjust. American Civil Liberties Union/Eastern Missouri Fund v. Miller, 803 S.W.2d 592, 595 (Mo. 1991)(quotation and citation omitted). An essential element of this tort is "a benefit conferred upon the defendant by the plaintiff." Id. (internal quotation omitted).

Boxes, Inc.'s unjust enrichment claim properly asserts that GFA and Hannigan received payments (a benefit) rightfully belonging to Boxes, Inc. from its customers for work that was performed by Boxes, Inc.'s employees. The retention of these payments by GFA and Hannigan, if they are proved to have been wrongly diverted to Defendants, would be inequitable.

"A submissible case of tortious interference requires the plaintiff to adduce evidence of: (1) a valid business expectancy; (2) defendant's knowledge of the relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages. Stehno v. Sprint Spectrum, L.P., 186 S.W.3d 247, 250 (Mo. 2006).

Boxes, Inc.'s tortious interference claim properly sets the elements of the clam against all Defendants including GFA and Hannigan. It assets the existence of business relationships with

its customers that it reasonably expected would continue; that Defendants had knowledge of these relationships; that Defendants intentionally interfered with the relationships without justification; and that Boxes, Inc incurred damages as a result of Defendants' improper actions.

To obtain equitable jurisdiction for an accounting a plaintiff must establish: "1) the need of discovery, 2) the complicated nature of the accounts, 3) the existence of a fiduciary or trust relationship, and 4) the inadequacy of legal remedies." Bossaler v. Red Arrow Corp., 897 S.W.2d 629, 630 (Mo. Ct App.1995). GFA and Hannigan assert that this claim should be dismissed because it fails to assert that GFA and Hannigan had a fiduciary or trust relationship with Boxes, Inc. The complaint does assert that the Davolts, Watson, and Gibilterra had a fiduciary and trust relationship with Boxes, Inc. The complaint also asserts that GFA and Hannigan, as co-conspirators of these employees, profited from their misdeeds. Missouri law broadly defines the nature of a fiduciary relationship. Service Life Ins. Co. of Fort Worth v. Davis, 466 S.W.2d 190, 196 (Mo. Ct. App. 1971)(" Equity refuses to set any bounds to the circumstances out of which a fiduciary relationship may spring. It includes not only those relationships technically fiduciary-such as attorney and client, principal and agent-but extends to instances where there is a special confidence reposed on one side and resulting domination and influence on the other. The question is always whether or not trust is reposed with respect to property or business affairs of the other.) By allegedly acting in concert with Boxes, Inc.'s employees, GFA and Hannigan may be subjected to the equity power of an accounting to identify the sums allegedly wrongly diverted from Boxes, Inc.

Accordingly,

**IT IS HEREBY ORDERED that** Defendants' motions to dismiss [# 30, 33, 35, 37, and 38] are **DENIED**.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 12th day of February, 2010.